UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:25-CV-00587-GNS

CHARLES E. IVY PLAINTIFF

v.

SCOTT BESSENT, in his official capacity
as Secretary of the Treasury; and
The UNITED STATES MINT, (Ft. Knox)
U.S. Department of Treasury DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss (DN 9). The motion is ripe for adjudication. For the reasons that follow, the motion is **GRANTED**.

## I. STATEMENT OF FACTS AND CLAIMS

Plaintiff Charles Ivy ("Ivy") began his employment with Defendant United States Mint at Fort Knox ("the Mint") on February 12, 2023. (Compl. ¶ 11, DN 1). The Mint circulates sign-up sheets which allow employees to volunteer for committees in order to engage in various career development opportunities, including two awards committees. (Compl. ¶¶ 13-14). These committee members are selected at the discretion of a single Field Chief and allegedly, no African American employees have been selected to serve. (Compl. ¶¶ 15-16). By contrast, Ivy alleges that White employees were regularly selected for these committees and were more likely to receive awards. (Compl. ¶ 17).

Ivy was not selected for either awards committee and alleges that as a result, he was faced with diminished chances for advancement, professional recognition, and compensation. (Compl. ¶¶ 14, 19). In addition, Ivy asserts that he suffered emotional distress, humiliation, and

frustration as a result of his not being selected for these committees. (Compl. ¶ 20). Ivy pursued administrative remedies through the Equal Employment Opportunity Commission ("EEOC"), but his complaint was dismissed for failure to state a claim by failing to allege personal harm. (Compl. ¶¶ 21-22). The dismissal was affirmed by the EEOC on appeal on June 12, 2025. (Compl. ¶ 22).

Ivy then commenced this action, asserting disparate treatment and disparate impact claims against Defendants Scott Bessent, in his official capacity as Secretary of the Treasury, and the Mint (collectively, "Defendants"). (Compl. ¶¶ 23-28). Ivy asserts that he has preserved a claim for constructive discharge, which is asserted in a related case currently pending with the Merit Systems Protection Board ("MSPB"). (Compl. ¶¶ 29-31). Defendants have moved to dismiss the Complaint for failure to allege sufficient facts to bring a claim and for failure to exhaust administrative remedies as it pertains to the claim for constructive discharge. (Defs.' Mot. Dismiss 1, DN 9).

## II. JURISDICTION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because a federal question is presented and pursuant to 42 U.S.C. § 2000e-16(c) authorizing a civil action within 90 days of receipt of a final notice from the EEOC.

## III. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(b)(6), a court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions, and a formulaic

recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. Furthermore, "'a legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)). Despite its leniency, "[the plausibility standard] asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The standard is satisfied when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## IV. DISCUSSION

### A. Disparate Treatment Claim

Defendants assert that Ivy has not alleged sufficient facts to plausibly meet the requirements for a disparate treatment claim under Title VII. (Defs.' Mem. Supp. Mot. Dismiss 4-10, DN 9-1). At the pleading stage, a plaintiff is not yet obligated to plead facts to establish a prima facie case of disparate treatment. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). This prima facie case requires a showing that the plaintiff "(1) was a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for his position, and (4) was replaced by someone outside the protected class or was treated differently from similarly situated members of the unprotected class." *Donaldson v. DeJoy*, No. 22-1651, 2024 WL 3493870, at *2 (6th Cir. May 1, 2024) (citing *Blount v. Stanley Eng'g Fastening*, 55 F.4th 504, 510 (6th Cir. 2022)).

Instead, the ordinary plausibility standard for assessing the sufficiency of a complaint applies. *Id*. Ivy must therefore "allege sufficient facts to allow the court to plausibly infer" that he was discriminated against on the basis of his race and color. *Washington v. Sodecia Auto.*, No. 25-1362, 2025 WL 2965835, at *2 (6th Cir. Oct. 21, 2025) (citation omitted). Ivy must also

plausibly allege that the treatment he received was caused by discrimination. *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012). Although the complaint need not present detailed factual allegations, it must allege sufficient factual content from which a court could draw the reasonable inference that the defendant discriminated against the plaintiff "*because of* [his] race, color, religion, sex, or national origin." *Id.* (quoting 42 U.S.C. § 2000e–2(a)(1)).

Even though Ivy is not required to plead facts alleging each of the prima facie elements, those elements are not irrelevant. "Under the ordinary pleading rules a complaint must still contain either direct or indirect allegations of the material elements of the alleged causes of action to show that a defendant is liable for the alleged misconduct." *Downs v. U.S. Postal Serv.*, No. 3:19-CV-00057-RGJ, 2019 WL 3947921, at *3 (W.D. Ky. Aug. 21, 2019) (citation omitted); *Dillworth v. Wormuth*, No. 3:20-CV-629-CHB, 2021 WL 5749097, at *12 (W.D. Ky. Dec. 2, 2021); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) ("[T]he elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." (citing *Swierkiewicz*, 534 U.S. at 515)).

In the Complaint, Ivy's factual allegations are sparse, and while they do not need to be specific enough to plead a prima facie case of disparate treatment, the allegations must be detailed enough to allow for an inference of liability. *Iqbal*, 556 U.S. at 678. Ivy has not met this burden.

Ivy primarily takes issue with the fact that he was excluded from certain committees; however, he does not allege that he expressed any interest in these committees, that he volunteered to participate on one of the committees, or that he was even qualified for participation on a committee. (Compl. ¶ 24). He also does not assert he was directly turned away from participation or dissuaded from volunteering. This gap in alleged facts prevents a plausible inference of causation.

Ivy relies on *Dews v. A.B. Dick Co.*, 231 F.3d 1016 (6th Cir. 2000), in arguing that his failure to apply for a committee does not defeat his claim. (Pl.'s Resp. Defs.' Mot. Dismiss 4, DN 10). He argues that there was no application process at all, meaning he could not express interest in committee membership. (Pl.'s Resp. Defs.' Mot. Dismiss 4). In *Dews*, the Sixth Circuit stated "in failure to promote cases a plaintiff does not have to establish that he applied for and was considered for the promotion when the employer does not notify its employees of the available promotion or does not provide a formal mechanism for expressing interest in the promotion." *Dews*, 231 F.3d at 1022. There is "a duty to consider all those who might reasonably be interested . . . ." *Id.* Not only has Ivy not alleged that he was "reasonably interested" in selection for a committee, meaning even under *Dews*, the field chief had no duty to consider Ivy for committee membership, but there apparently *did* exist a mechanism for expressing interest in committee membership. Contrary to his later argument, the complaint alleges that "sign-up sheets for collateral duties" which "allow employees to volunteer for committees" were circulated each year by the agency. (Compl. ¶ 13).

Ivy does not allege that he never received a sign-up sheet, that he was discouraged from signing up, that he expressed interest in signing up, or that he did in fact sign up for committee participation and was rejected. At most, Ivy contends that he was "systematically excluded" from the committees along with other African American men. (Compl. ¶ 14). This allegation without additional facts is nothing more than an unsupported conclusory statement and "such naked assertions add nothing to the complaint's sufficiency." *White v. Coventry Health & Life Ins. Co.*, 680 F. App'x 410, 415-16 (6th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678) (affirming dismissal of an employment discrimination claim which included conclusory allegations that plaintiff was

"constantly berated, degraded and humiliated" and "suffered from harassment and a hostile work environment").

Finally, Ivy has failed to allege any qualifications which make him more suited for either a committee position or for receipt of an award than the White individuals who received those honors. All the elements of a prima facie case of disparate treatment do not need to be pleaded at this stage but the "complaint must still contain either direct or indirect allegations of the material elements of the alleged causes of action . . . ." *Downs*, 2019 WL 3947921, at *3 (citation omitted). One of those material elements is that he must be "qualified for his position." *Donaldson*, 2024 WL 3493870, at *2 (citation omitted). No part of the Complaint indicates directly, indirectly, or in any other manner that Ivy was partially or fully qualified for either committee membership or award nomination and receipt. "Us[ing] the prima facie elements as guideposts[,]" Ivy has thus failed to allege a plausible claim for relief. *See Downs*, 2019 WL 3947921, at *3.

Simply put, Ivy has not alleged enough facts to support an inference that he was treated differently because of his race. *See Keys*, 684 F.3d at 610. While disparate treatment may be possible, the plausibility standard requires "more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

**B. <u>Disparate Impact Claim</u>**

Defendants next seek dismissal of Ivy's claim for disparate impact for a failure to plead sufficient facts to state a claim. (Defs.' Mem. Supp. Mot. Dismiss 4-10). "Disparate impact results from facially neutral employment practices that have a disproportionately negative effect on certain protected groups and which cannot be justified by business necessity." *Waldon v. Cincinnati Pub. Schs.*, 941 F. Supp. 2d 884, 888 (S.D. Ohio 2013) (citation omitted); *see also Davis v. Dist. of Columbia*, 925 F.3d 1240, 1248 (D.C. Cir. 2019). "Generally disparate impact analysis is used in a class action, but it may also form the basis of an individual claim." *Bacon v.*

*Honda of Am. Mfg., Inc.*, 370 F.3d 565, 576 (6th Cir. 2004) (citation omitted). If a plaintiff chooses to individually argue a disparate impact theory, he "must show that the challenged policy directly disadvantaged him in some fashion." *Id.* at 577 (citation omitted).

"Plaintiffs show a prima facie case of disparate impact by '(1) identify[ing] the particular employment practice; (2) show[ing] a disparate impact on a protected group, and (3) prov[ing] the employment practice caused the disparity.'" *Davis v. Teamsters Loc. Union No. 783*, 837 F. Supp. 2d 646, 653 (W.D. Ky. 2011) (quoting *Shollenbarger v. Planes Moving & Storage*, 297 F. App'x 483, 485 (6th Cir. 2008)). Like with a claim of disparate treatment, a disparate impact claim of employment discrimination does not need to plead specific facts establishing the prima facie case at the pleading stage. *Lyman v. Montclair at Partridge Creek, LLC*, No. 23-CV-10131, 2023 WL 6096678, at *5 (E.D. Mich. Sep. 18, 2023) (citing *Keys*, 684 F.3d at 609). Despite this more lenient pleading standard, "[a] party alleging a disparate-impact theory must [still] allege a specific employment practice in the complaint." *E.E.O.C. v. Peoplemark, Inc.*, 732 F.3d 584, 591 (6th Cir. 2013) (citation omitted).

The specific employment practice which Ivy has identified as problematic is the discretionary selection process of awards committee members overseen by a single field chief. (Compl. ¶ 27). Ivy alleges this process has resulted in no African American men having historically served on the awards committees and no African American men having received awards despite repeated nominations. (Compl. ¶ 27). This type of discretionary employment practice is proper for analysis under a disparate impact theory. *Davis v. Cintas Corp.*, 717 F.3d 476, 488 (6th Cir. 2013); *see also Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 991 (1988).

Taking these allegations as true, Ivy's disparate impact claim suffers from the same problem as his disparate treatment claim: a lack of connection between the alleged discriminatory

process and the alleged injury. This case is analogous to *Bacon v. Honda of America Manufacturing, Inc.*, 370 F.3d 565 (6th Cir. 2004), where, based on preliminary statistical analysis, the plaintiffs identified multiple employer practices, including testing, promotion, and work attendance policies, which had a disproportionately negative impact on African American employees. *Bacon* 370 F.3d at 576-79. The Sixth Circuit ultimately held that dismissal of the claim was proper and explained that "[w]hatever the validity of those disparate impact claims . . . , we agree with the district court that the plaintiffs cannot show that the policies injured them personally, and therefore their claim must fail." *Id.* at 577.

Likewise in this case, Ivy has not alleged any facts to show that the policy had an effect on him personally. Nowhere in the Complaint does Ivy allege that he signed up to be part of an awards committee, that he was interested in or expressed any interest in being part of a committee, or that he was prevented or discouraged from being part of a committee of which he wished to be a member. If Ivy had no desire to be on an awards committees and more importantly, if he did not sign up when the sign-up sheets were circulated by the agency, then the fact that the discretionary selection policy may or may not have a disparate impact on African American men did not personally injure him.[1] His employment continued in the same manner as before, unaffected by the discretionary process. Just as in *Bacon* where the plaintiffs could not show that the policies injured them, Ivy's allegations are insufficient. *See Bacon*, 370 F.3d at 577.

---

[1] Ivy's alleged facts are also similar to *Savel v. MetroHealth System*, 96 F.4th 932 (6th Cir. 2024), in which the court affirmed the dismissal of allegations on the basis of standing when the plaintiff alleged a discriminatory denial of a religious vaccination accommodation but never alleged that she requested an accommodation which could be subject to denial. *Id.* at 941. Likewise, Ivy does not allege that he signed up for or expressed an interest in committee membership which could be refused on the basis of race.

**C. <u>Agency Remedy Exhaustion</u>**

Finally, Defendants seek dismissal of the constructive discharge claim. (Defs.' Mem. Supp. Mot. Dismiss 11-16). It is not entirely clear from the parties' filings what path the constructive discharge claim has taken through the various administrative agencies which might provide relief. What is clear, is that Ivy's constructive discharge claim is currently pending with the MSPB as a "mixed case." (Compl. ¶ 31). A "mixed case" involves a serious personnel action, such as removal from employment or reduction in pay, which was also taken for discriminatory reasons. *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012); 29 C.F.R. § 1614.302 (2024). This mixed case can be brought before the MSPB directly or it can be brought before the relevant agency and then appealed to the MSPB. *Kloeckner*, 568 U.S. at 45; 5 C.F.R. § 1201.154(a)-(b) (2012). This appears to be the stage the administrative complaint has reached.

If the MSPB upholds the personnel action, that decision can be appealed either to the EEOC, or to the relevant district court. *Kloeckner*, 568 U.S. at 45; 5 C.F.R. § 1201.161(b) (2026); 29 C.F.R. § 1614.303 (2012). If the MSPB fails to render a judicially reviewable decision within 120 days from the filing of a mixed case, the claim may be pursued in federal district court. *Butler v. West*, 164 F.3d 634, 639 (D.C. Cir. 1999); 5 U.S.C. § 7702(e)(1)(B).

The Complaint does not state whether or not this 120-day period has passed. This limit is critical because if 120 days have passed without a judicially reviewable decision, this Court may take jurisdiction, and the administrative remedies will be considered exhausted. Otherwise, Ivy is required to exhaust administrative remedies before pursuing a claim of discrimination under Title VII in this Court. *Watson v. Ohio Dep't of Rehab. & Corr.*, 167 F. Supp. 3d 912, 922 (S.D. Ohio 2016) (citation omitted), *aff'd*, 690 F. App'x 885 (6th Cir. 2017); *see also McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) ("In permitting federal employees to sue under Title

VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'" (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833 (1976))). If 120 days have not passed since the last judicially reviewable decision, the MSPB should have a full opportunity to decide the merits of his separate pending administrative complaint before this Court interferes.

Because Ivy has not exhausted his administrative remedies at the MSPB, has not asserted that 120 days have passed without a judicially reviewable decision, and apparently intends to wait for the MSPB to issue a final decision before proceeding, the motion is granted, and the constructive discharge claim is dismissed without prejudice due to Ivy's failure to exhaust all administrative remedies.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (DN 9) is **GRANTED**, and the Complaint is **DISMISSED WITHOUT PREJUDICE**. The Clerk shall strike this matter from the active docket.

**Greg N. Stivers, Judge**
**United States District Court**
September 17, 2026

cc: counsel of record